UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 12 CR 386 |
| vs. | ) | Judge John W. Darrah |
| | ) | |
| KENDRA SPICER | ) | |

## NOTICE OF FILING

TO: Katherine Sawyer  
    Assistant United States Attorney  
    219 S. Dearborn Street, 5th Floor  
    Chicago, IL 60604

Jodi Halleran  
United States Probation Officer  
219 S. Dearborn Street, Room 15100  
Chicago, IL 60604

Please take notice that on this 18th day of April, 2014, the undersigned filed the following document(s) in the above-captioned cause, a copy of which is attached hereto.

- **KENDRA SPICER'S SENTENCING MEMORANDUM**

FEDERAL DEFENDER PROGRAM  
Carol A. Brook  
Executive Director

By: *s/ Beth W. Jantz*  
    Beth W. Jantz

BETH W. JANTZ  
FEDERAL DEFENDER PROGRAM  
55 E. Monroe Street, Suite 2800  
Chicago, IL 60603  
(312) 621-8342

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 386 |
| vs. | ) | Judge John W. Darrah |
| | ) | |
| KENDRA SPICER | ) | |

**KENDRA SPICER'S SENTENCING MEMORANDUM**

KENDRA SPICER, by the Federal Defender Program and its attorney, BETH W. JANTZ, submits this sentencing memo, pursuant to 18 U.S.C. §3553(a), *United States v. Booker*, 125 S.Ct. 738 (2005), and its progeny:

Ms. Spicer has no prior criminal convictions, is currently employed, and is the single mother of three children (ages 12, 13, and 15). Her crimes took place more than 7 years ago, during a time period in which she was addicted to powder cocaine and involved in a destructive relationship. Since that time, Ms. Spicer has beat her powder cocaine addiction, has gone back to her family and church, has not gotten into any other criminal trouble, has held good jobs, has gone back to school to become a dental hygienist, and has been raising her three children.

This history suggests that Ms. Spicer is unlikely to ever again engage in the criminal activity to which she has admitted in this case. Additionally, she has already sustained punishment for her involvement in this crime: this is her first

felony conviction, she will have to pay back a significant amount of restitution, and she lost a good job with American Airlines as a result of her arrest for this case, (PSR at 15). As reflected in her letter to the Court,[1] Ms. Spicer is deeply remorseful about her crime, and that time period of her life in general.

Ms. Spicer's advisory Guidelines range is 21-27 months. If this Court imposes a sentence of prison time, Ms. Spicer will lose the good job she currently has, (PSR at 17), will cease being able to attend school toward becoming a dental hygienist, and will be separated from her three children at critical times in their lives. Ms. Spicer admits and understands that she neglected her children once before during the time period of her crimes. She has tried to do what she can since then to never repeat that.

Based on all of this, the defense is respectfully requesting a sentence of one day of jail, time considered served,[2] with the maximum term of supervised release (5 years), plus whatever other special conditions this Court deems appropriate as further punishments for her crimes, such as electronic monitoring for a certain time period.

---

[1] Ms. Spicer's letter to this Court will be sent directly to chambers, the government, and the probation officer.

[2] Probation is not available for bank fraud, 18 U.S.C. §1344, 3561, but this Court can impose one day of jail, time considered served, and a term of supervised release, to achieve effectively the same result.

Ms. Spicer recognizes and understands the damage her criminal conduct caused in this case, both to the victims and to her family. But a sentence that allows Ms. Spicer to stay out of jail now will mean she can continue to both support and care for her children, continue going to school to better herself and her economic future, and continue to work to pay back the restitution she owes. It is respectfully suggested that society has more to gain by allowing Ms. Spicer to remain in the community, than it does by paying to lock her up for some amount of time.

In further support of this sentence request:

I. **Advisory Guidelines range and the PSR**

Ms. Spicer has no objections to the Guidelines calculations in the PSR. The PSR accurately calculates her Guidelines with a total offense level of 16, a criminal history category of I with no points, and an advisory Guidelines range of 21-27 months' custody. (PSR at 17.)

II. **§3553(a) considerations**

   A. **Nature and circumstances of the offense**

Ms. Spicer has pled guilty to one count of bank fraud, in violation of 18 U.S.C. §1344. (Plea Agreement at ¶5.) Her offense conduct is detailed in the Plea Agreement. (Id. at ¶6.) In sum, more than 7 years ago, between March 2005 and January 2007, Ms. Spicer participated in a group scheme wherein the group

3

members used blank checks stolen usually from the mail and fraudulent IDs to make purchases at retail stores, and then re-sell the merchandise on the street or return the merchandise for refunds in cash. (Id.)

There was a lot of theft in this case, and that is not disputed. Ms. Spicer was not the leader of the scheme, but she did make the bad decision to participate in this crime. Ms. Spicer takes responsibility for and does not contest any of this.

Ms. Spicer knows that her actions caused the banks financial loss, and the individual victims great stress and inconvenience. She will be required to pay back the full amount of loss for which she is directly responsible. And, Ms. Spicer actually has a chance to pay this back, given her current schooling to become a dental hygienist. The U.S. Bureau of Labor Statistics reported that the median salary in 2012 for dental hygienists was about $70,000 per year.[3]

Why did Ms. Spicer engage in this criminal conduct? In short, she was addicted to powder cocaine during this time period, and looking to support her habit any way she could. Additionally, she had joined in the scheme with her boyfriend at the time, Eddie Moore, who is a co-defendant in this case and with whom Ms. Spicer was involved in a negative relationship at the time. As Ms.

---

[3] http://www.bls.gov/ooh/healthcare/dental-hygienists.htm

4

Spicer writes in her letter to the Court, "[t]he crimes that I have pled guilty to I didn't do because I was looking for financial security. I did these things because I wanted to buy drugs, get high, and keep a false pretense of love. But I'm not going to blame this for all my mistakes. I take responsibility for my actions and blame it on being young and dumb."

Ms. Spicer recognizes that this is in no way an excuse or justification for her actions, but this is nevertheless the context under which she chose to make her bad decisions. The good news is that Ms. Spicer has taken steps since that time to make sure this does not repeat itself.

The PSR also notes that the agent on the case now reported some difficulties in interviewing Ms. Spicer after her arrest. (PSR at 7.) Defense counsel does not recall any report of interview of Ms. Spicer's arrest being provided to the defense. Nevertheless, it seems that Ms. Spicer exercised her constitutional right not to provide information to agents upon her arrest. Importantly, however, Ms. Spicer timely pled guilty in this case and has readily admitted and accepted the wrongfulness of her crimes.

### B. History and characteristics of Ms. Spicer

As included in the introduction to this memo, since the time period of her crimes, Ms. Spicer has taken steps to make significant changes in her life. And she did most of this hard work well before her arrest in this case.

The defense does not disagree with the government's presentation of the offense conduct in its sentencing memo. (Dkt #161.) But the defense does part ways with the government's characterization of Ms. Spicer's history and characteristics. (Id. at 3-4.) The government asserts that Ms. Spicer "needs to take drastic steps to change her behavior, become a productive member of society, and support her family." (Id. at 4.) Ms. Spicer has done just that since the time of her crimes.

Ms. Spicer was raised in a single parent home. Her biological father was addicted to heroin and left the family. (PSR at 12.) Ms. Spicer started having her own kids at the relatively young age of 17, and eventually left her kids with her mother.

Ms. Spicer also started using powder cocaine around the age of 18, and gradually developed a daily addition to it. (PSR at 13.) Ms. Spicer struggled with this addiction during the time period of her crimes. As Ms. Spicer expresses in her letter to the Court, "I thought that I could control [my use of cocaine]. I was wrong. I started chasing a high that was not catchable. . . . I started getting high on a regular basis and started to do things to assure that next high that I was always chasing." Ms. Spicer was fortunately able to recover from this addiction, through the help of her pastor and her church. (PSR at 13.)

6

The PSR also details Ms. Spicer's relatively robust work and educational history. (PSR at 14-15.) After this previously destructive period of her life and a short-term job in 2007, Ms. Spicer obtained a good job with American Airlines in 2008 as a fleet service crew member, cleaning, unloading, and loading airplanes. (PSR at 15.) She held this job for 4 years. She lost this job as a result of her arrest for this case.

She had trouble finding work after that, but started her schooling at Kennedy King College to become a dental hygienist in May 2013. After another short-term job in early 2014, Ms. Spicer obtained her current job, working for the company that processes red light tickets for the City of Chicago. (PSR at 14.) Ms. Spicer also holds a diploma in medical assisting, (PSR at 14), which should further enhance her job prospects upon completion of school.

Currently, Ms. Spicer works, goes to school part-time, and cares for her 3 children. She also helps to care for her mother, who is on oxygen due to a rare lung disease. Needless to say, a sentence of prison time would almost certainly result in the loss of Ms. Spicer's current good job and interrupt both her schooling and the care of her children and mother.

Perhaps the biggest impact this sentencing will have is on Ms. Spicer's three children, ages 12, 13, and 15, particularly given that Ms. Spicer is a single

7

mother.  It is not lost on Ms. Spicer that she is to blame for putting her children in this position, but she has tried to do what she can to be a good mother since re-uniting with her family.

Ms. Spicer has been on pretrial release in this case for about 2 years, since May 2012.  The PSR notes that in those 23 months, Ms. Spicer has tested positive for marijuana 4 times.  (PSR at 5.)  Nevertheless, pretrial services has not recommended any sanctions nor reported any other problems of any sort from Ms. Spicer during her pretrial release.  Therefore, it is respectfully suggested that these missteps are not strong enough evidence to suggest that Ms. Spicer will not be successful on continued supervision.

> C. **Affording adequate deterrence, and protecting the public from further crimes**

With regard to specific deterrence and protection of the public, the more than 7 years since Ms. Spicer's crimes and her lack of any other criminal convictions suggest that she has a very low risk of recidivism.  The age of this prosecution has provided the Court and the public with a benefit:  it has allowed for a relatively lengthy post offense time frame for Mr. Spicer to establish that recidivism does not seem to be a concern in her case.

Indeed, the Sentencing Commission has researched and documented that age, gender, and lower criminal history result in lower recidivism rates.  See U.S.

8

Sentencing Commission, "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," May 2004 (found at: http://www.ussc.gov/Research_and_Statistics/Research_Publications/2004/200405_Recidivism_Criminal_History.pdf). This is especially true for those in Ms. Spicer's category (no criminal history points, criminal history category I, age of 32 at sentencing, female), who have a recidivism rate of only 10-14.6%. See id. at 28.

In short, even if a custodial sentence under the Guidelines was appropriate back closer to the time of Ms. Spicer's crimes, such a custodial sentence now would ignore the passage of time and the progress that Ms. Spicer has strove for and achieved in her life since then.

### D. Reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment

It is not as if Ms. Spicer would be escaping punishment even if this Court does impose a non-custodial sentence. As noted above, even before this Court sentences Ms. Spicer, she will have faced punishment as a result of her involvement in this case. Given that this is Ms. Spicer's first felony conviction on her record, the instant case is punishment alone. She also lost her good job with American Airlines as a result of her arrest in this case.

Ms. Spicer will also have to pay back all of the restitution she owes for this case. Allowing Ms. Spicer to continue being gainfully employed and advance her

9

professional development through schooling gives the victim banks their best chance to actually re-coup the money they are owed from Ms. Spicer.

E.   **Avoiding unwarranted sentence disparities among defendants**

One of the sentencing considerations in 18 U.S.C. §3553(a) is "the need to avoid unwarranted sentence disparities *among defendants with similar records* who have been found guilty of similar conduct." (emphasis added.) There are 4 co-defendants in this case. The exact nature of their involvement varies somewhat, but roughly all were found guilty of similar conduct, albeit with varying loss amounts. (PSR at 7.)

One significant distinction between some of the co-defendants is their past criminal records, however. Ms. Spicer appears to be the only co-defendant with no prior criminal convictions. (Mr. Jeffries' was calculated as CHC III; Mr. Hamilton's was CHC IV; Mr. Moore's was CHC II.) On this basis alone, it would seem that Ms. Spicer has a relatively lower risk of recidivism, and thus less need for deterrence through incarceration. Additionally, co-defendant Moore received essentially the same sentence that Ms. Spicer is requesting now, and had a relatively similar loss amount to Ms. Spicer. (PSR at 7.)

**III. Sentence request: one day, time considered served; maximum term of supervised release + any special conditions this Court deems appropriate**

Given all of these considerations, Ms. Spicer respectfully suggests that her sentence request for one day, time served, and the maximum term of supervised release would not be just a "slap on the wrist." Rather, it would be a sentence that imposes additional punishment, while also taking into account the varied goals of §3553(a), to arrive at a sentence that makes the most sense in her particular case.

While a technical sentence of probation is not available in this case because Ms. Spicer pled to bank fraud, 18 U.S.C. §1344, 3561, supervised release is available, and can be likened to probation under these circumstances. As the Supreme Court has explained about probation, it is a "substantial restriction of freedom": "[w]e recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). *Gall* explains that, "probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person

convicted of a felony, and refrain from excessive drinking." *Id*. All of these conditions and restrictions would be part of Ms. Spicer's supervised release, plus any other special conditions this Court deems appropriate.

The maximum term of supervised release is 5 years, 18 U.S.C. §3583(b)(1), and that maximum is what the defense is requesting. Furthermore, this Court could sentence Ms. Spicer to additional, special conditions of supervised release that it deems appropriate, such as home confinement with electronic monitoring for a certain period of time. *See* 18 U.S.C. §§3583(d). While this proposed plan is certainly less onerous than incarceration, it is still punishment, §3553(a)(2)(A), while at the same time advancing the other goals of sentencing discussed above.

## IV. Conclusion

Putting Ms. Spicer in prison would not only result in genuine hardship to her children, but it would also mean that Ms. Spicer would lose the good job she has now and halt her schooling, which hopefully will result in the real payback of restitution in the future. Simply put, any time in prison would be devastating to Ms. Spicer and her family. We respectfully ask the Court to consider the key question, here, as being whether or not there is a need for imprisonment in this particular case. While the Guidelines may recommend time in prison, that advice can be wrong in cases such as this. It is respectfully submitted that the §3553(a) considerations do not call for a custodial sentence in this case.

Respectfully submitted,
					FEDERAL DEFENDER PROGRAM
					Carol A. Brook,
					Executive Director
			By:	/s/ Beth W. Jantz
					Beth W. Jantz
					Attorney for Kendra Spicer

BETH W. JANTZ
Federal Defender Program
55 East Monroe, Suite 2800
Chicago, Illinois 60603
(312) 621-8342

# CERTIFICATE OF SERVICE

The undersigned, Beth W. Jantz , an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**KENDRA SPICER'S SENTENCING MEMORANDUM**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on April 18, 2014, to counsel/parties that are non-ECF filers.

Jodi Halleran
United States Probation Officer
55 E. Monroe Street, 15th Floor
Chicago, IL 60603


By: s/*Beth W. Jantz*
Beth W. Jantz
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, Illinois 60603
(312) 621-8342